**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION**

CMI ROADBUILDING, INC., and CMI
ROADBUILDING LTD.,

               Plaintiffs,

vs.

IOWA PARTS, INC.,

               Defendant.

No. 16-CV-33-LRR

**ORDER**

------

TABLE OF CONTENTS

I. INTRODUCTION ................................................................. 1
II. PROCEDURAL BACKGROUND ....................................... 2
III. PLAINTIFFS' MOTION TO COMPEL ................................ 3
IV. THE KING DEPOSITION AND PLAINTIFFS' MOTION FOR LEAVE ....... 16
V. PLAINTIFFS' MOTION FOR SANCTIONS ......................... 21
VI. CONCLUSION ................................................................ 24

## *I.* *INTRODUCTION*

This case is before the Court on plaintiffs' resisted motion to compel discovery, to impose sanctions, and for leave and additional time to conduct a Rule 30(b)(6) deposition. (Doc. 128). Defendant filed its timely resistance, and plaintiffs filed a timely reply. (Docs. 129, 130). Both parties included exhibits with their filings. These attachments have been considered. For the reasons stated below, the Court grants in part plaintiffs' motions.

## II.    PROCEDURAL BACKGROUND

This case concerns allegations by CMI Roadbuilding, Inc. and CMI Roadbuilding Ltd. (plaintiffs) that defendant Iowa Parts, Inc. (defendant) misappropriated trade secrets in the form of engineering documents acquired by and exclusively licensed to plaintiffs in violation of state and federal law. (Doc. 81). Plaintiffs also pled common law conversion and unjust enrichment claims seeking, among other remedies, compensation for defendant's use of plaintiffs' proprietary information and trade secrets. (*Id.*).

Discovery for this case began in 2016. A general protective order was entered on August 17, 2016, pursuant to the parties' joint motion. (Doc. 37, 38). In September of 2016, plaintiffs brought their first motion to compel discovery, seeking production of engineering documents in defendant's possession. (Doc. 41). Subsequently, defendant filed an unresisted motion for a second protective order, arguing that plaintiffs' production request encompassed sensitive information that had no bearing on this case and, therefore, requested that this Court require plaintiffs to identify the trade secrets or proprietary information at issue. (Docs. 48, 48-1). At a hearing on the motion to compel, defendant agreed to produce approximately 1,000 pages of plans, specifications, and drawings, notwithstanding its objection that these included documents not related to this lawsuit. (Doc. 50).

On October 24, 2016, the Court entered an order granting in part plaintiffs' motion to compel in light of this agreement. (*Id.*). On November 9, 2016, the Court entered an order summarily granting defendant's unresisted motion for a protective order to the extent that it was not inconsistent with the order on the motion to compel. (Doc. 53). Defendant maintains that plaintiffs have yet to articulate the particular trade secrets defendant is alleged to have misappropriated. (Doc. 129, at 4).

In May 2017, defendant produced engineering documents pursuant to the October 2016 order to compel and, under the protective order, designated the documents as being

for "Attorney's Eyes Only." Plaintiffs filed a motion requesting that this designation be reduced to "Confidential" to permit inspection by certain persons. On May 26, 2017, the Court granted plaintiffs' motion. (Doc. 109).

The instant motion marks the parties' third discovery dispute in this case. In their motion, plaintiffs seek to compel defendants to supplement production of documents identified in plaintiffs' initial discovery requests. (Doc. 128). Plaintiffs claim that information gathered during the depositions of Yvonne Bardwell, Suzy Hartley, and Jay King purportedly shows that defendant has failed to produce responsive financial documents. (Doc. 128-1 at 3, 4). Additionally, plaintiffs request that the Court impose sanctions against defendant on the grounds that defendant has abused the discovery process and frustrated plaintiffs' fair examination of Bardwell, Hartley, and King. (Doc. 128, at 1). Finally, plaintiffs request leave and additional time to conduct a Rule 30(b)(6) deposition of defendant. (*Id.*). Pursuant to Local Rule 37(a), plaintiffs aver to have conferred in good faith with defendant in an attempt to resolve these issues. (*Id.*).

Discovery was scheduled to close on August 9, 2017. (Doc. 62).

### III.   *PLAINTIFFS' MOTION TO COMPEL*

Plaintiffs' motion aims to compel supplemental production of certain financial and accounting records pertaining to defendant's business. In their initial written discovery requests, plaintiffs sought, *inter alia*, production of the following documents, which are now the subject of dispute:

a) "any and all documents, including invoices, bills, receipts and contracts relating to Iowa Parts, Inc.'s purchase of materials, tools, or machinery to be utilized in the manufacturing of products sold by Iowa Parts, Inc. from 2006 to the present";

b) "any and all State and Federal tax returns for Defendant Iowa Parts, Inc. from 2006 to the present";

c) "any and all pro-forma income statements or balance sheets, statements of cash flow, budgets, and other bookkeeping paperwork related to Defendant Iowa Parts, Inc.'s operation between 2006 and the present"; and

d) "all monthly income statements for Defendant Iowa Parts, Inc., showing the revenue and expenses generated by that entity (fixed and variable)."

(Doc. 128-1, at 7-8). Subsequently, in a March 10, 2017, letter addressed to defense counsel (hereinafter "March 10 letter"), plaintiffs' counsel extended what the Court takes to be an offer to narrow the scope of the foregoing production requests. (Doc. 128-8). The letter stated that there remained "basic information which must be provided" by defendant, including defendant's records of sales and costs of production "since 12/31/10 relating to the asphalt plant, concrete plant, and landfill and dirt compaction equipment product lines that is for a part or component for a product manufactured by [defendant], its subsidiaries and/or affiliates." (Doc. 128-8, at 1-2). These narrowed requests have been incorporated into plaintiffs' motion. (Doc. 128-1, at 8).

On March 30, 2017, defendant responded to plaintiffs' demand for supplemental production explaining that, "[w]ith respect to sales and costs of production, Iowa Parts is not able to search for responsive documents based upon a drawing number, type, or description." (Doc. 128-9, at 1). Defendant claimed that it had received over 15,000 purchase orders since 2010, but acknowledged that "[i]f Iowa Parts is provided with a part number, [it is] able to identify related purchase orders that would need to be manually searched." (*Id.*). Plaintiffs do not claim to have provided a list of part numbers to date, although they have identified 3,600 engineer drawings which plaintiffs allege contain trade secrets. (Docs. 129-1, at 1, 130, at 3). Notably, these drawings have been identified by spreadsheet, but the drawings themselves remain unproduced. (*Id.*).

Plaintiffs acknowledge that defendant has produced at least 42 pages of financial and accounting information in response to its requests, including a "Sales by Rep

Summary" for the years 2011 through 2016, as well as balance sheets and profit and loss statements for the same time span. (Doc. 128-1, at 4). Plaintiffs argue, however, that defendant has withheld additional responsive documents to which plaintiffs are entitled.

Plaintiffs point to deposition testimony by Bradwell, Hartley, and King as evidence that accessible, unproduced financial records exist. Plaintiffs claim these records include financial statements, sales reports, commission reports, and account receivables, which are collectively in the possession of defendant's sole shareholder, Mike Hawkins, and also available on defendant's computer system. (*Id.*, at 9). Further, billing records, employee records, and non-compete contracts are located in the filing cabinet in Hartley's office. (*Id.*). "[A]ccount receivable reports for all companies or individuals who have purchased products from [defendant], historical records of commissions for all sales of products, and a list of the pre[ ]-paid expenses" are all allegedly available on defendant's computer system. (*Id.*). Finally, plaintiffs allege that Bardwell used state and federal income tax documents, information about employees' gross earnings, profit and loss statements, balance sheets, and bank statements. (*Id.*). Plaintiffs ask the Court to compel defendant's production of these materials, as well as defendant's payroll reports, income and expense statements, and retained earnings, which were used by Bardwell in the course of her employment. (*Id.*, at 9-10).

In its resistance, defendant argues that supplemental production is not required. Its position, in essence, is that plaintiffs' demand is overly broad and unduly burdensome. Defendant claims that plaintiffs have failed to sufficiently particularize the trade secrets alleged to have been misappropriated, resulting in defendant's inability to identify relevant financial documents. (Doc. 129, at 3-4). Citing the Court's November 9, 2016, protective order, defendant argues that plaintiffs are required to identify the relevant trade secrets before compelling discovery from defendant. (*Id.*, at 4). Additionally, to the extent that it is able to determine the scope of relevant discovery, defendant claims that

the documents plaintiffs identify in their motion pertain to defendant's general business operations and are largely irrelevant to this trade secret litigation. (*Id.*, at 5, 7). Although defendant admits that "a small percentage" of the documents plaintiffs seek relate to the products and designs identified thus far (*id.*, at 7), defendant contends that locating and producing these documents would "involve the manual review of 15,000 plus documents." (*Id.*, at 9-10).

### A.    *Standards for Compelling Production*

In analyzing the merits of plaintiffs' motion to compel, the Court looks to the Federal Rules of Civil Procedure regarding the scope of discovery and the obligation of the parties. Rule 26(b)(1) provides:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

FED. R. CIV. P. 26(b)(1); *see also* FED. R. CIV. P. 34(a) (providing for discovery by production requests within the scope of Rule 26(b)). A party has an ongoing obligation to supplement discovery answers in a timely manner if it learns that a previous response was incomplete or incorrect, or where the party is so ordered by a court. FED. R. CIV. P. 26(e)(1). "[A] party resisting production bears the burden of establishing lack of relevancy or undue burden." *St. Paul Reinsurance Co. v. Commercial Fin. Corp.*, 198 F.R.D. 508, 511 (N.D. Iowa 2000).

Rule 26(b) is widely acknowledged to be "liberal in scope and interpretation, extending to those matters which are relevant and reasonably calculated to lead to the

discovery of admissible evidence." *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992) (citation omitted). The reach of the rule is not bound by the rules of admissibility, as discovery "is a[n] investigatory tool intended to help litigants gain an understanding of the key persons, relationships, and evidence in a case." *Liguria Foods, Inc. v. Griffith Labs., Inc.*, No. C 14-3041-MWB, 2017 WL 976626, at *7 (N.D. Iowa Mar. 13, 2017) (alteration in original) (quoting *Sentis Grp., Inc. v. Shell Oil Co.*, 763 F.3d 919, 925 (8th Cir. 2014)). Nevertheless, "this often intoned legal tenet should not be misapplied so as to allow fishing expeditions in discovery," and "[s]ome threshold showing of relevance must be made before parties are required to open wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues in the case." *Hofer*, 981 F.2d at 380. Accordingly, a district court "must limit the frequency or extent of discovery otherwise allowed . . . if it determines that . . . the burden or expense of the proposed discovery outweighs its likely benefit" in light of the factors enumerated by Rule 26(b)(1). *WWP, Inc. v. Wounded Warriors Family Support, Inc.*, 628 F.3d 1032, 1039 (8th Cir. 2011) (alteration in original) (quoting FED. R. CIV. P. 26(b)).

## B. *Plaintiffs' Broad Requests for Financial and Accounting Documents*

The parties' current dispute concerns not one, but two categories of discovery to which plaintiffs claim to be entitled. On the one hand is the broader category of financial and accounting records arguably responsive to paragraphs 21, 27, 39, and 40 of plaintiff's original written discovery request. On the other hand are the records relating to sale of and production costs for replacement parts designed to be used in certain equipment made by other companies, as identified by plaintiffs' March 10 letter. The Court will address the broader category before proceeding to the narrower.

There is no doubt that certain information relating to defendant's finances is

relevant to the issue of damages and is subject to discovery in this case. "Discovery is not limited to the merits of a case," and may be necessary for developing other issues. *Pudlowski v. The St. Louis Rams, LLC*, 829 F.3d 963, 964 (8th Cir. 2016) (applying the limits of discovery to issues of jurisdiction). For instance, defendant's general accounting records will be relevant for preparing plaintiffs' case on the issue of punitive damages under the common law conversion claim. *See N. Dakota Fair Hous. Council, Inc. v. Allen*, 298 F. Supp.2d 897, 899 (D.N.D. 2004) ("A plaintiff seeking punitive damages is entitled to engage in discovery relating to the defendant's financial worth in advance of trial. The discovery of financial records of a defendant in order to prepare a case on the issue of punitive damages is permissible."). Additionally, plaintiffs correctly assert in their reply that evidence regarding the profits defendant has earned from replacement parts developed from the designs at issue will be necessary for proving compensatory damages, as well as for establishing the independent economic value element of plaintiffs' state law misappropriation claim. *See NCMIC Fin. Corp. v. Artino*, 638 F. Supp.2d 1042, 1076-77 (S.D. Iowa 2009) (describing the requirement under Iowa Code § 550.2(4) that a trade secret derive independent economic value from its secrecy).

But relevance is only one side of the equation. In order to be enforceable, a request for production must also be proportional to the needs of the case, considering, among other factors, the parties' relative access to the information, the importance of the discovery in resolving the issues, and the relative burdens and benefits of the proposed discovery. FED. R. CIV. P. 26(b)(1). Here, plaintiffs request far more discovery than is necessary to support their articulated needs at this stage of the case. Defendant has already produced yearly balance sheets and sales records that provide plaintiffs with a general accounting of defendant's operation. Although these documents may not offer the particular sales information plaintiffs seek for the purpose of showing lost profits and trade secret value, plaintiffs have not demonstrated that further production of general

8

business documents such as employee records, non-compete contracts, state and federal income tax documents, bank statements, and payroll reports would provide that information beyond the discovery already obtained. The deposition testimony cited by plaintiffs may establish that these documents are readily available to defendant, but the information contained appear to be cumulative and the marginal possible benefit derived from access to the documents would be outweighed by the burdens defendant would incur in their production.

Nonetheless, the Court acknowledges plaintiffs' need for documents probative of the profits derived from plaintiffs' alleged trade secrets. Certain sales reports, commission reports, account receivables, billing records, and income and expense statements may be useful to this end. Yet, because these records presumably contain information specific to individual transactions rather than the general operation of defendant's business, the question of relevance returns to the fore. Defendant claims that "[o]nly a small percentage" of these documents relate to the products and designs at issue. (Doc. 129, at 7). As plaintiffs fail to make a threshold showing as to which or how many of the responsive documents in the possession of Bardwell, Hartley, and Hawkins are relevant to proving defendant's profits from the disputed parts, the Court declines to grant plaintiffs' broad demands for supplemental production pursuant to paragraphs 21, 27, 39, and 40 of their initial written discovery requests. *Hofer*, 981 F.2d at 380. Moreover, the Court is persuaded that the burden and costs of production of any relevant information would be disproportionately high, given the volume of documents at issue, to the marginal value of the additional information.

### C.    *Plaintiffs' Narrower Request for Records of Sales and Production Costs*

Plaintiffs' narrower request prompts a more nuanced analysis. Pursuant to their March 10 letter to defense counsel, plaintiffs request records created on or after December 31, 2010, pertaining to the sales of and production costs for parts or

components of products designed for use in a "product manufactured by Iowa Manufacturing, Standard Havens, Cedarapids, Cedarapids/Standard Havens, CMI Corporation, [or] Terex" and relating to "the asphalt plant, concrete plant, and landfill and dirt compaction equipment product lines." (Doc. 128-8, at 1-2). Records responsive to the request for sales records are electronically available on defendant's computer system, although documents predating July of 2016 must be accessed through different software. (Docs. 129-5, at 85-86, 87-89:7;129-7, at 220-21).

The Court understands defendant's objection to plaintiffs' narrower request to be twofold. Defendant first argues that the request fails to meet Rule 26(b)'s relevance prong, as it encompasses sales and production records that may not relate to plaintiffs' trade secrets. In support of this argument, defendant asserts that plaintiffs have failed to sufficiently particularize the trade secrets at issue in this case, and, as a result, plaintiffs are unable to determine whether even the limited requests of plaintiffs' March 10 letter would yield documents that would ultimately be relevant to this case. Defendant alternatively argues that producing reports of sales and production costs related only to the product lines identified by plaintiffs' letter will be unduly burdensome and thus disproportionate to the needs of the case. Defendant states that it "has [received] over 15,000 purchase orders" since 2010 and that it can screen these orders for responsive documents only if provided with a part number. (Doc. 129, at 9).

### 1. Relevance

Since the Advisory Committee's 2000 amendments, parties may obtain, as of right, only discovery "relevant to any party's claim or defense;" discovery that relates to the "subject matter" of the case but is not relevant to any claim or defense may only be obtained on court order. 8 WRIGHT & MILLER, FED. PRAC. & PROC. § 2008, at 129-30 (3d ed. 2010). In none of its iterations has Rule 26(b) ever contemplated the strict requirements of Federal Rule of Evidence 401. *See* FED. R. EVID. 401 (requiring that

relevant evidence meet a two pronged test for probativeness and materiality); FED. R. CIV. P. 26(b) ("Information within this scope of discovery need not be admissible in evidence to be discoverable."); FED. R. CIV. P. 26(b) Advisory Committee's Note to 1946 amendment ("The amendments . . . make clear the broad scope of examination and that it may cover not only evidence for use at the trial but also inquiry into matters themselves inadmissible as evidence but which will lead to the discovery of such evidence."). Rather, "[s]ince decisions as to relevance . . . are made for discovery purposes well in advance of trial, a flexible treatment of relevance is required and the making of discovery, whether voluntary or under court order, is not a concession or determination of relevance for purposes of trial." FED. R. CIV. P. 26(b)(1) Advisory Committee's note to 1970 amendment. Ultimately, relevancy decisions are "intrinsically ad hoc." WRIGHT & MILLER, *supra* 10, § 2008, at 146.

Bearing these principles in mind, it must first be observed that although plaintiffs' March 10 letter requests sales and cost information for parts related to defendant's "asphalt plant, concrete plant, and landfill and dirt compaction equipment product lines," (Doc. 128-8, at 1-2), plaintiffs allege misappropriation only with regard to defendant's asphalt plant product line. (Doc. 81, at 7). Allegations as to the other product lines were made only against a party that has since been dismissed. (Docs. 81, at ¶¶ 40-44; 85). Plaintiffs have not made a threshold showing of relevance as to a need for financial documents pertaining to products beyond the asphalt plant line. Therefore, records of sales and costs for parts related to the concrete plant and landfill and dirt compaction equipment product lines are not relevant with regard to plaintiffs' claims against defendant.

The Court does find, however, that the request for records of sales and production costs for the line of asphalt plant parts identified by plaintiffs' March 10 letter is within the scope of relevant discovery permitted by Rule 26(b). At the center of this litigation

is plaintiffs' belief that these parts were developed using misappropriated trade secrets found in the engineering drawings plaintiffs acquired. Plaintiffs state that they seek the requested documents in order to calculate the profits defendant has earned from these products. (Doc. 130, at 2). Should plaintiffs prove at trial that these products were indeed developed from plaintiffs' trade secrets, evidence of these profits will be necessary to prove compensatory damages, as well as to establish the independent economic value of the secrets themselves. (*Id.*). Furthermore, plaintiffs have tailored their request to encompass only those records related to parts used on equipment manufactured by six entities whose "intellectual property, trade secrets, trademarks, and engineering documents" have been acquired by plaintiffs. (*See* Doc. 81, at 2-3). Thus, to the extent it pertains to the asphalt plant product line, plaintiffs' request seeks information relevant to their claims in this suit.

Defendant contends that the scope of relevant discovery in this case is narrower than even plaintiffs' tailored request. Defendant argues that only sales and cost records pertaining to those products actually developed from the drawings plaintiffs allege to be trade secrets should be discoverable, and that plaintiffs have failed to specify those trade secrets at issue. Defendant points to the rule observed in several jurisdictions that "[i]n cases involving trade secret misappropriation, . . . the party alleging misappropriation must identify its trade secrets with reasonable particularity." (Doc. 129, at 3 (citing *DeRubeis v. Witten Techs., Inc.*, 244 F.R.D. 676 (N.D. Ga. 2007))).

According to *DeRubeis*, several rationales motivate the rule that a plaintiff alleging misappropriation must particularize its trade secrets prior to discovery. These include:

> (1) If discovery on defendant's trade secrets were automatically permitted, lawsuits might regularly be filed as "fishing expeditions" to discover the trade secrets of a competitor; (2) until the trade secret plaintiff has identified the trade secrets at issue with some specificity, there is no way to know whether the information sought is relevant; (3) it is difficult for a defendant to mount a defense until it has some indication of the trade secrets allegedly

misappropriated, and (4) requiring the plaintiff to state its claimed trade secrets prior to engaging in discovery ensures that it will not mold its cause of action around the discovery it receives.

*Switch Commc'ns Grp. v. Ballard*, No. 2:11-CV-00285-KJD-GFW, 2012 WL 2342929, at *4 (D. Nev. June 19, 2012) (summarizing *DeRubeis*, 244 F.R.D. at 680-81). The Court finds these rationales counsel against requiring the plaintiffs in this case to reduce their already-narrowed discovery request to a yet finer grain. Neither the goal of preventing a "fishing expedition" to discover trade secrets, nor the goal of preventing plaintiffs' *post hoc* shaping of claims would be achieved by applying the *DeRubeis* rule here. The instant motion simply seeks production of accounting information necessary for proving damages and for establishing the value element of plaintiffs' misappropriation claim; plaintiffs do not seek information likely to advance the merits of any new claim or earn them a competitive edge in the marketplace. Additionally, the present specificity of plaintiffs' request does not prejudice defendant's ability to mount its defense, nor does it leave defendant without guidance as to what information is relevant to the claims at issue. Defendant is well-apprised of the particular product line plaintiffs take to be at issue, and plaintiffs have identified 3,600 engineering drawings alleged to contain trade secrets. *DeRubeis* is unpersuasive here.

Thus, the Court finds that with the exception of those records related to the concrete plant and landfill and dirt compaction product lines, the records of costs and sales requested by plaintiffs' March 10 letter meet the bar of Rule 26(b) relevance in light of plaintiffs' theory that the products to which those documents relate were developed, at least in part, from plaintiffs' trade secrets. Although trial may reveal that some of the parts among this group were not developed from plaintiffs' alleged trade secrets, it would be imprudent to preclude discovery based on that possibility. The relevance of a discovery request should be evaluated in light of the information sought, rather than by

speculation as to whether the information produced will be found material at trial. *See Transamerica Life Ins. Co. v. Moore*, 274 F.R.D. 602, 608 (E.D. Ky. 2011) ("[A] discovery request should be considered to be seeking relevant information if there is any possibility that the information *sought* may be relevant to a claim or defense raised." (emphasis altered) (internal quotation marks omitted)); *Goodyear Tire & Rubber Co. v. Kirk's Tire & Auto Servicenter of Haverstraw, Inc.*, 211 F.R.D. 658, 663 (D. Kan. 2003) (stating that discovery should be granted where "the information *sought* may be relevant." (emphasis added)).

### 2. *Proportionality*

Defendant argues that, even if the records of sales and costs of production sought by plaintiffs' March 10 letter are relevant, the financial costs of satisfying the request would outweigh any benefits. Defendant fails to meet its burden regarding this argument.

After scrutinizing the parties' briefing on the issue, the mechanics of defendant's records management system remain unclear to the Court. Defendant suggests that producing documents relevant only to the products identified by plaintiffs' request would require a manual review of 15,000 purchase orders. (Doc. 129, at 9-10). Although plaintiffs have offered a list of engineering documents alleged to contain trade secrets, which contain design numbers and descriptions, defendant claims that defendant is not able to search its computer system by design number or description, meaning that a manual search would be required. (*Id.* at 9). However, plaintiffs point to the deposition of Jay King as evidence that purchase orders may be searched by job number or vendor number. (Docs. 128-1, at 11, 129-7, at 220:4-22). Plaintiffs argue that these parameters may be used in combination to efficiently search for responsive documents. (Doc. 128-1, at 11).

Defendant has consistently maintained both in its March 30, 2017, letter and in its Rule 30(b)(6) deposition that producing responsive records in the manner suggested by

plaintiffs is not "as simple as [plaintiffs] mak[e] it sound." (Doc. 129-7, at 224:15-16). Defendant concedes, however, that "[i]f Iowa Parts is provided with a part number, [it is] able to identify related purchase orders that would need to be manually searched." (Doc. 129, at 9 (emphasis omitted)). Defendant does not appear to argue that this "manual searching" would be unduly burdensome. Further, defendant does not present a reason as to why it must be provided part numbers for parts made for use in a product relating to the asphalt plant product line. Defendant is the seller of the parts in question, and has not persuasively disclaimed its access to that information. Nor has defendant indicated how many part numbers may fall within that category. As the party resisting production of relevant documents, defendant bears the burden of explaining why identifying the part numbers for these products and searching for responsive purchase orders would be disproportionate to the needs of the case. This burden has not been met.

Additionally, defendant does not address its ability to identify and produce other documents responsive to the March 10 letter. In light of plaintiffs' claims that Hartley, Bardwell, and Hawkins possess certain sales reports, commission reports, account receivables, billing records, and income and expense statements responsive to their initial discovery requests, the Court is unconvinced that there exist no documents beyond purchase orders which would constitute records of sales and costs of production for the asphalt plant product line.

In short, defendant has not shown that the burden of producing records responsive to plaintiffs' narrow request would outweigh plaintiffs' critical need for the light they will shed on the profitability of the disputed products. Therefore, plaintiffs' motion to compel discovery **is granted in part**. Defendant is ordered to produce any records created on or after December 31, 2010, that defendant can locate by searching for a product number and that consist of a record of sale or production cost of a part made for Iowa Manufacturing, Standard Havens, Cedarapids, Cedarapids/Standard Havens, CMI

Corporation, or Terex equipment and relating to the asphalt plant product line. Defendant will have thirty (30) days from the date of this Order to complete this production.

## IV. THE KING DEPOSITION AND PLAINTIFFS' MOTION FOR LEAVE

The Court turns next to plaintiffs' motion for leave and additional time to depose defendant pursuant to Rule 30(b)(6). Plaintiffs seek the Court's leave pursuant to Federal Rule of Civil Procedure 30(d)(1), and further request that the Court order defendant to pay plaintiffs' attorneys' fees and costs as provided by Rule 30(d)(2). The motion rests on plaintiffs' claim that defendant's corporate designee, Jay King, was unprepared and unresponsive during his deposition, effectively thwarting plaintiffs' ability to conduct a fair examination of defendant.[1]

### A. King's Deposition

On July 11, 2017, plaintiffs deposed Jay King, defendant's general manager and Rule 30(b)(6) corporate designee. (Doc. 129-7, 30:12). Pursuant to plaintiffs' Rule 30(b)(6) notice, King was to testify regarding fourteen different subject matters, including: defendant's library of engineering documents; sales by defendant relating to the parts at issue; defendant's sales relationship with Maxam Equipment; particular engineering documents prepared for or provided by certain entities; purchases, agreements, and communications with vendors relating to the disputed parts; communications with customers; public disclosures of engineering documents; and "gray books" relating to the disputed parts. (Doc. 128-15, at 4-7). King stated that he had been designated at the advice of defendant's counsel to testify regarding all of these

---

[1] Plaintiffs also assert their dissatisfaction with the knowledge and preparedness of deponents Suzy Hartley and Yvonne Bardwell. (Doc. 128-1, at 13-14). However, beyond the claim that these persons were "identified by [defendant] as having the most knowledge of accounting and issues relating to [defendant's] taxes," (*id.* at 14), plaintiffs present no authority supporting a requirement of preparedness for persons deposed under the vehicle of Rule 30(a)(1). In any event, plaintiffs do not seek leave for additional time to depose Hartley and Bardwell, and, therefore, the Court will not entertain these complaints.

topics, and that he had received plaintiffs' notice prior to the deposition. (Doc. 129-7, at 6).

Near the start of the deposition, plaintiffs' counsel questioned King regarding his preparation to be examined on the topics described in the notice. King stated that he had not reviewed any documents between the time he received the notice and the time of his deposition. (Doc. 129-7, at 12:19-22). He further stated that he had not met with any of defendant's officers or directors or conferred with any other employee with regard to any of the topics in the notice. (*Id.*, at 12:23-13:4). Plaintiffs cite to instances on ten of the fourteen topics wherein King fails to answer a question or admits to unpreparedness. (Doc. 128-1, at 12-13 (citing excerpts)). In plaintiffs' view, these examples show that King "was not knowledgeable of any of the topics for which he was produced to testify and . . . [that] [defendant] deliberately limited his preparation." (*Id.*, at 12).

Defendant argues that plaintiffs mischaracterize King's preparedness by cherry-picking his testimony and misrepresenting the extent of King's ability to respond to questions knowledgably. (*See* 129, at 13-14). Defendant further asserts that King's vast personal knowledge of defendant's operation made additional preparation unnecessary. (*Id.*, at 12). Defendant claims that King's knowledge was sufficient "to testify on all matters except for [those questions seeking] specific information contained in documents that could not be retained by a normal person." (*Id.*, at 14).

### B. The Standard for Deposition Preparedness

Unlike other deponents, persons deposed as corporate designees under rule 30(b)(6) must testify on matters "not only within his or her personal knowledge, but also on matters reasonably known by the responding entity." *All. for Glob. Justice v. District of Columbia*, 437 F. Supp.2d 32, 37 (D.D.C. 2006) (citation omitted); *see also* FED. R. CIV. P. 30(b)(6) (stating a designee "must testify about information known or reasonably available to the organization"). Accordingly, "[i]f no current employee has sufficient

knowledge to provide the requested information, the party is obligated to prepare one or more witnesses so that they may give complete, knowledgeable and binding answers on behalf of the corporation." *Dravo Corp. v. Liberty Mut. Ins. Co.*, 164 F.R.D. 70, 75 (D. Neb. 1995) (citation, internal quotation marks, and alteration omitted)).

Proper preparedness for a Rule 30(b)(6) deposition requires the good faith of both parties. "[T]he requesting party must reasonably particularize the subjects about which it wishes to inquire." *Dwelly v. Yamaha Motor Corp.*, 214 F.R.D. 537, 540 (D. Minn. 2003); *see also* FED. R. CIV. P. 30(b)(6) (requiring that the notice describe the matters for examination with "reasonable particularity"). A deposing party may not demand that a corporate designee be prepared to speak with encyclopedic authority. *See generally Murphy v. Kmart Corp.*, 255 F.R.D. 497, 506 (D.S.D. 2009). In return, "the responding party must make a conscientious, good-faith effort to designate knowledgeable persons . . . and to prepare them to fully and unevasively answer questions about the designated subject matter." *Dwelly*, 214 F.R.D. at 540 (citations and internal quotation marks omitted).

A court may levy "appropriate sanction[s] for a corporation's inadequate designation" in response to a Rule 30(b)(6) notice. *See Cedar Hill Hardware & Const. Supply, Inc. v. Ins. Corp. of Hannover*, 563 F.3d 329, 345 (8th Cir. 2009); *see also* FED. R. CIV. P. 30(d)(2). However, a court should be hesitant to award sanctions for unpreparedness where the focus of a deposition becomes counsel's critique of a designee's knowledge, rather than an effort to reach substantive information. *See Custom Hardware Eng'g & Consulting, Inc. v. Dowell*, No. 4:10CV000653 ERW, 2012 WL 4108930, at *4 (E.D. Mo. Sept. 18, 2012) (declining to award sanctions on the basis of a Rule 30(b)(6) deponent's responses when the record "suggest[ed] that counsel was more concerned with documenting his dissatisfaction with the witness's attempts to respond to questions, than he was with obtaining meaningful answers").

As an alternative to sanctions, an ineffective Rule 30(b)(6) deposition may be remedied by a second deposition of the corporation. Pursuant to Federal Rule of Civil Procedure 30(a)(2), a party must obtain the Court's leave to conduct a deposition if the deponent has already been deposed in the case. Where "the deponent, another person, or any other circumstance" has impeded fair examination, the court must allow additional time consistent with Rule 26(b). FED. R. CIV. P. 30(d)(1).

### C. Analysis

The Court finds some support for both parties' characterizations of Jay King's testimony upon its own review of his deposition. King responded competently to many questions germane to his knowledge as defendant's general manager, including questions about employees (Doc. 129-7, at 32:22-33:24); defendant's dealings with its primary vendors (*id.* at 50:14-51:12); and even a lengthy series of questions regarding defendant's engineering practices (*see generally id.* at 59:10-68:23). Yet, in general it appears defendant failed in its obligation to prepare King to speak on behalf of the corporation. According to plaintiffs' tally, King's examination produced over fifty "don't know" answers to questions. (Doc. 130, at 5). King candidly admitted that he did "[b]asically nothing" to prepare for the deposition. (Doc. 129-7, at 11:2-12). This lack of any preparatory measure on behalf of King or defendant to ready King for the deposition does not reflect a "conscientious, good-faith effort" to prepare a knowledgeable designee.

However, the issue then becomes whether any amount of effort could have prepared King to respond knowledgably to all of plaintiffs' questions. In response to plaintiffs' counsel's suggestion that King's ignorance had been willful, King responded that he "could have spent months preparing and may not have had the right . . . answers." (*Id.*, at 211:6-14). Indeed, throughout the deposition, plaintiffs' counsel pressed King on questions demanding extreme exactitude. In one instance, counsel asked:

> Q. How many pages of blueprints of Standard Havens does [defendant] have in its possession at its headquarters here in Cedar Rapids? I want the exact number.
> A. Don't know the exact number.
> Q. How many for Iowa Manufacturing?
> A. Don't know the exact number.
> Q. How many for Cedarapids?
> A. Don't know the exact number.

(*Id.*, at 31:11-19). In another instance, counsel asked:

> Q. Did you meet with everyone [in defendant's sales staff] and review all of [their email] communications with customers so you could identify [th]em for me here today and discuss [th]em with me?
> A. No, I did not.
> Q. Why not?
> A. It would take every day of the last six months to do it.

(*Id.*, at 38:19-39:1). A good-faith effort to prepare a corporate designee does not contemplate preparation to the level of specificity or breadth reflected in plaintiffs' counsel's quizzing. What these examples also show is that if plaintiffs sought answers to such specific areas of information, then their Rule 30(b)(6) notice failed to "reasonably particularize the subjects" about which it would inquire in the examination. *See Dwelly,* 214 F.R.D. at 540. In addition to other broad and ambiguous categories, plaintiffs' notice generally sought information regarding defendant's entire library of engineering documents and over six years' worth of communications with customers and vendors. (Doc. 128-15, at 5-6). Absent from the notice was plaintiffs' apparent expectation that King would be able to list every blueprint and recall every email. Information of such breadth and detail exceeds the scope of any designee's ability to properly prepare, particularly when the notice was not more specific. *See Murphy*, 255 F.R.D. at 505-06 (finding insufficient specificity where plaintiff's notice sought information regarding the entire "corporate history of Kmart Corporation, Kmart Holding Corporation, Sears

Corporation, and Sears Holdings Corporation for the last ten (10) years . . . and the bankruptcy in 2001.").

Finding that both parties failed in their obligations under Rule 30(b)(6), the Court declines to impose sanctions on the basis of King's unpreparedness. However, the Court **grants** leave for additional time for plaintiff to depose defendant pursuant to the requirements of Rule 30(b)(6), with each party to bear its own costs and fees. This deposition must be completed within thirty (30) days following the entry of this Order. Plaintiffs are instructed to serve on defendant a notice describing the topics to be examined with sufficient specificity. Defendant must subsequently provide a representative or representatives adequately prepared to speak on the topics identified.

## V.    *PLAINTIFFS' MOTION FOR SANCTIONS*

Having found that defendant conducted discovery at least partially improperly, the Court now turns to the issue of sanctions. Plaintiffs move for sanctions on two bases:[2] First, defendant's failure to produce documents responsive to plaintiffs' written requests for financial records "stonewall[ed] Plaintiffs' ability to gather relevant information" (Doc. 128-1, at 12); Second, defendant's Rule 30(b)(6) corporate designee, Jay King, as well as deponents Suzy Hartley and Yvonne Bardwell, were unprepared and unresponsive during their depositions, "imped[ing] Plaintiffs' ability to discover admissible evidence and frustrat[ing] Plaintiffs' fair examination of [defendant]." (*Id.* at 14). Plaintiffs request that the Court impose sanctions pursuant to its authority under Federal Rules of Civil Procedure 26(g)(3), 30(d)(2), 37(b)(2)(A)(i)-(iv), and 37(c). (Doc. 128-1, at 17).

---

[2] Beyond the grounds addressed below, Plaintiffs also call for sanctions in light of what they construe as admissions by Jay King that defendant "provided Plaintiffs with irrelevant documents and that its answers/responses to Plaintiffs' written discovery were not accurate." (Doc. 128-1, at 16 (citing King's deposition)). The Court finds this claim to be without merit. Based on the deposition excerpts cited by plaintiffs, the Court is unable to conclude that defendant's production or responses were unreasonable, unduly burdensome, served for an improper purpose, or not grounded in law. *See* FED. R. CIV. P. 26(g)(1)(B).

Specifically, plaintiffs ask the Court to order defendant to "pay for the cost of [the] second [Rule 30(b)(6)] deposition, including attorneys' fees for [p]laintiff's counsel's preparation, travel time, the time for taking the deposition and any court reporter fees for any required depositions," as well as "reasonable expenses and attorney[s'] fees for preparing [plaintiffs' instant motion]." (Doc. 128-1, at 18-19).

Federal Rule of Civil Procedure 26(g)(1) requires that an attorney certify that every discovery disclosure is complete and correct as of the time it is made, and that every discovery response be consistent with Rule 26. Rule 26(g)(3) provides that a court "must" impose appropriate sanctions "[i]f a certification violates this rule without substantial justification." The Rule provides that "[t]he sanction may include an order to pay the reasonable expenses, including attorney's fees, caused by the violation." FED. R. CIV. P. 26(g)(3). Additionally, Federal Rule of Civil Procedure 37(c) provides, in relevant part, that a party who fails to supplement a discovery response "is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." FED. R. CIV. P. 37(c)(1). The Rule also permits the Court to assess monetary or non-monetary sanctions against the offending party. (*Id.*).

Federal Rule of Civil Procedure 30(d)(2) permits the Court to impose an appropriate sanction on a person who "impedes, delays, or frustrates the fair examination" of a Rule 30 deponent. Federal Rule of Civil Procedure 37(b)(2) authorizes a variety of sanctions to be levied against a corporate party whose officer, director, manger, or Rule 30(b)(6) designee "fails to obey an order to provide or permit discovery." Unlike Rules 26(g)(3) and 37(c), which require imposition of sanctions where a party violates discovery rules without substantial justification, Rules 30(d)(2) and 37(b)(2) are permissive in nature, and may be applied at the Court's discretion. *See Sec. Nat. Bank of Sioux City, IA v. Jones Day*, 800 F.3d 936, 941 (8th Cir. 2015)

(reviewing Rule 30(d)(2) sanctions for abuse of discretion); *Avionic Co. v. Gen. Dynamics Corp.*, 957 F.2d 555, 558 (8th Cir. 1992) (reviewing Rule 37(b)(2) sanctions for abuse of discretion).

Because defendant's failure to adequately prepare a corporate designee for the Rule 30(b)(6) deposition was due in part to the insufficiency of plaintiffs' notice, the Court declines to impose sanctions under Rules 30(d)(2) or 37(b)(2). The final question to be resolved is whether sanctions are warranted for defendant's failure to produce documents in response to the demand of plaintiffs' March 10 letter. Despite defendant turning over 42 pages of financial documents responsive to plaintiffs' broad written discovery requests, defendant has not produced any records informative as to the sales or costs of production of the particular products at issue. Nevertheless, the Court finds that defendant was substantially justified in this failure in light of defendant's reasonable objections to the appropriateness of plaintiffs' requests. *See Kamps v. Fried, Frank, Harris, Shriver & Jacobson L.L.P.*, 274 F.R.D. 115, 118 (S.D.N.Y. 2011) (stating that a party's resistance to discovery is sufficiently justified "if there is a 'genuine dispute,' or 'if reasonable people could differ as to the appropriateness'" of the request (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)).

Defendant reasonably resisted plaintiffs' broad discovery requests for financial and accounting information on grounds of irrelevance and disproportionality. As explained above, plaintiffs' sweeping requests for general financial information are only relevant in light of their claim for punitive damages, and are disproportionate to the needs of the case beyond the sampling of documents defendant has produced. Additionally, with respect to the narrower requests of plaintiffs' March 10 letter, defendant's objections to relevance on the basis of *DeRubeis* were reasonable, if unavailing. While the Court finds application of *DeRubeis* unnecessary in the context of this discovery dispute, the Court acknowledges defendant's reliance on the Court's November 9, 2016, protective order

(Doc. 53), which defendant construes to require plaintiffs further specify the alleged trade secrets.

Plaintiffs' request for imposition of sanctions under Rules 26(g)(3) and 37(c) is therefore **denied**.

## VI. *CONCLUSION*

For the reasons set forth herein, plaintiffs' motion to compel is **granted in part**, plaintiffs' motion for sanctions is **denied**, and plaintiffs' motion for leave and for additional time to depose defendant pursuant to Rule 30(b)(6) is **granted**, provided that each party bear its own fees and costs.

**IT IS SO ORDERED** this 21st day of September, 2017.

_____
C.J. Williams
Chief United States Magistrate Judge
Northern District of Iowa